HOBSON, Justice.
This is an appeal by the defendant from judgment entered consequent upon a verdict of guilty of manslaughter. The sole point raised on appeal is the sufficiency of the evidence to sustain a conviction.
In considering, and denying, a motion for new trial the trial judge entered an order in which he summarized the testimony. We reproduce it in part as follows:
“Briefly, the circumstances as shown by the testimony are, that the defendant was operating a large van type merchandise truck and was traveling south on the right hand side of Highway 129 in Hamilton County, and that Ambrose E. NeSmith was, at the same time on the same highway operating his automobile traveling north on his right hand side of the road. At the same time John Mizzell was operating an empty school bus on the same road and traveling south on his right hand side of the road. The truck came from around the rear of the school bus into the lane of traffic on which NeSmith was traveling, and there was a collision as a result of which he was killed.
“The State charged that the death of Mr. NeSmith was brought about and the collision which resulted in his death *535 caused by the culpable negligence of the defendant in the operation of the truck, and that Mr. NeSmith was in no wise responsible therefor.
“The undersigned presided at the trial and had full opportunity to see, hear and observe the witnesses. The State’s position was, that Lester ‘caught up’ with the school bus and in a culpably negligent manner attempted to run around the bus and get ahead of it, and while doing so the truck and Mr. NeSmith’s car met head on and Mr. NeSmith was killed. The defendant’s contention was, that he came up behind the school bus, and that it suddenly stopped right in front of him, and that in attempt to avoid hitting the bus he turned into the other lane of traffic and because of that collided with Mr. NeSmith’s car.
“To support its charge of culpable negligence the State called John Mizzell who testified that he was a school bus driver, and that he had been so employed by the Hamilton County School Board for a long time, and that on this occasion he had delivered the last of the children from the bus near their homes a short distance back up the road, and was proceeding at a slow rate of speed on his way to his home; that he saw the truck approaching him from the rear and as it neared him it whipped out into the other lane of traffic to pass him, and that about that time and almost opposite his school bus the truck and car of Mr. NeSmith collided and Mr. NeSmith was killed. He denied stopping his bus as claimed by Lester, but testified that he was driving slowly along the road at the time. Another witness for the State, Fred Woodberry, testified that he was sitting on the porch of his home near the scene of the collision, and that he saw the school bus stop near his house and saw the children alight therefrom, and saw Mizzell drive the bus on south on the highway, and that he saw the truck pass his house and ‘catch up’ with the school bus, and that suddenly the truck swerved into the other lane of traffic and speeded up to pass the bus just before the collision took place, but that he could not see the collision because of the truck being in his line of vision, but he heard the ‘rumbling’ of the impact of the truck and automobile. There was another witness, a Mr. Faulkner, who testified both for the State and the Defendant. He was traveling north on his fight hand side of the highway behind the car being driven by NeSmith. He saw the truck come from behind the School bus and that it looked like to him that at the time the bus was coming at slow speed or stopped. At various points in his testimony he was questioned on this important question, and in each instance his reply was hesitant and uncertain and to the general effect that he did not know for certain, he thought so, but he could not say for sure. There was another witness, J. T. Goff, who was riding with Mr. Faulkner, but his testimonial contribution was very scant, for he testified he didn’t see the collision; he didn’t know how it happened; he didn’t know whether the school bus was stopped or moving; he didn’t see the truck coming down the road; he didn’t observe the school bus; he was looking off at something else.
“In view of the verdict rendered by the jury, it is clear that they placed no credence in the testimony of the defendant, Lester, and that because of the uncertain attitude and reply of the witness, Faulkner, regarding a material matter of vital importance in the case, it is evident the jury attached but little if any weight to his testimony. Therefore, the Court is of the opinion that the jury founded their verdict upon the testimony of John Mizzell, the driver of the school bus, and of Fred Wood-berry, each of whom testified positively as to the defendant Lester driving his truck near to the rear of the school bus *536 and then suddenly whipping his truck over into the lane of traffic and speeding up in order to pass the school bus and the collision which took place almost beside the school bus, on the side of the road upon which NeSmith was traveling going north.
“It is significant to note from the testimony of Faulkner, that a few moments before the collision between the truck and NeSmith’s car, that Faulkner took a notion that he would pass Ne-Smith who was traveling just ahead of him, and he eased out into the left lane of traffic to see what was ahead, and he saw the school bus coming and pulled back behind the NeSmith car. That was just a whipstitch of time before the collision and the school bus was not stopped, for he testified he ‘saw the school bus coming.’ If Lester had taken the precaution in trying to pass the school bus, that Faulkner did in deciding to pass or not pass the Ne-Smith car, the collision would not have happened, NeSmith would not have been killed, his wife would not now be a widow and his children bereft of their father, and Lester would not be before the court as he is.”
The issue posed for our consideration is whether or not upon these facts the jury was authorized to find that culpable negligence within the meaning of F.S. § 782.07, F.S.A., had been made out by the State. In considering this problem previously, we have so often described the standard of care contemplated by the statute that it is unnecessary to restate it in this case. See Cannon v. State, 91 Fla. 214, 107 So. 360; Savage v. State, 152 Fla. 367, 11 So.2d 778; Preston v. State, Fla., 56 So.2d 543; Miller v. State, Fla., 75 So.2d 312; and Hunt v. State, Fla., 87 So.2d 584.
Appellant contends in essence that the case of Miller v. State, supra, 75 So.2d 312, is controlling herein,, and necessitates a reversal., True it is that the Miller case is close.oh its. facts ini that the appellant Miller unaccountably permitted his car to swerve to the left hand side of the road, where it struck the car of the decedent, which had been proceeding in the opposite direction. But there are other physical facts in the instant case which strengthen the position of the State. The truck driven by appellant herein was forty feet long. Proceeding down a long straight road, on a clear, dry day, appellant had had the school bus under observation, according to his own admission, for “a mile or a half mile” and had seen the school bus stop to let out children. The truck was in good condition, and the brakes were in good working order. The truck left skid marks 123 feet from their start to the point of impact.
A vehicle of the size of the truck in this case is a lethal instrument when involved in a head-on, or nearly head-on, collision with a passenger car. A vehicle of this size and weight is obviously more difficult to control than a common private automobile. The State contends, and we agree, that the sight of a school bus should convey a special warning to all approaching vehicles. With the school bus so long in his line of vision the appellant had full opportunity to place his vehicle under that full' and complete control which the situation demanded. The jury was apparently convinced that instead of doing so he chose to cut sharply to the left around the bus without attempting to determine whether or not any vehicle was approaching. In our opinion, the jury was authorized to conclude that this action on the part of the appellant evinced a reckless disregard of human life sufficient to bring the case under the cited; statute.
The judgment appealed from must accordingly be, and it is hereby, affirmed.
TERRELL, ROBERTS and THORNAL,. JJ., concur.
DREW, C. J., and THOMAS and' O’CONNELL, JJ., dissent. ■ - ■ .