622 So.2d 188 (1993)
STATE of Florida, Appellant,
v.
Steven Earl KNIGHT, Appellee.
No. 92-827.
District Court of Appeal of Florida, First District.
August 18, 1993.
*189 Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellant.
Nancy A. Daniels, Public Defender, Abel Gomez, Asst. Public Defender, Tallahassee, for appellee.
CAWTHON, Senior Judge.
The state appeals from an order granting a motion to dismiss an information brought pursuant to rule 3.190(c)(4), Florida Rules of Criminal Procedure, on the basis that the facts contained in the investigative report did not establish a prima facie case of vehicular homicide. For the following reasons, we reverse.
The record reveals that on July 11, 1991, at approximately 9:01 a.m., Cornelia Robinson was traveling south in her car in a predominantly residential area of Pensacola. Upon reaching the stop sign at an intersection, she stopped, then proceeded across the intersection. In doing so, as later noted in the investigative officer's report, Robinson committed a traffic infraction by failing to yield the right-of-way after stopping.
As Robinson's car proceeded into the intersection, she was struck on the driver's side by a car driven by Knight, who was traveling west at a high rate of speed. The force of the impact caused the door to crush in 29 inches and to knock Robinson's vehicle 106 feet laterally from the point of impact. When Officer Michael Porter arrived at the accident scene, Robinson showed no signs of life and was pronounced dead by paramedics. Knight and his two passengers sustained only minor injuries.
The report prepared by Porter stated that at the time of the accident, Knight, who was 16 years old, did not possess a valid Florida driver's license and was driving his mother's car without her consent or knowledge. Although the posted speed limit on the street where the accident occurred was 35 miles per hour, a forensic engineer who examined Officer Porter's information determined that Knight was traveling "between 65-70 miles per hour with a most probable speed being 67 miles per hour" at the time of the collision. Knight skidded approximately 95 feet with his brakes fully locked before colliding with Robinson's vehicle in the eastbound lane. Officer Porter noted in his report that Knight's car was in "poor condition" prior to the collision, and that the area where the collision occurred "is residential, and the intersection is bordered by a church, community baseball park, and single family residences." The report went on to describe the street in question as "lightly traveled."
Based on the above findings, Knight was charged by information with one count of vehicular homicide in violation of section 782.071, Florida Statutes.[1] Knight thereafter filed a sworn motion to dismiss pursuant *190 to rule 3.190(c)(4), in which he stipulated that the facts contained in Porter's report were accurate but did not establish a prima facie case of vehicular homicide. Specifically, Knight contended that the report reflected "his only culpability was driving his vehicle in excess of the speed limit," and that excessive speed does not constitute vehicular homicide.
After considering Porter's report, the court found the undisputed facts did not support a prima facie case for violation of the statute, and therefore granted the motion. The trial court agreed with Knight that the charge was based solely on excessive speed which was insufficient to establish a violation of section 782.071.
Whether or not a jury would ultimately find or would be justified in finding Knight guilty of vehicular homicide is not now our concern, as we are faced here solely with the issue of whether the state presented a prima facie case that Knight operated his vehicle in a reckless manner likely to cause the death of, or great bodily harm to, another, and that such operation resulted in the death of Cornelia Robinson. In this regard, it is critical to bear in mind that when considering a motion to dismiss, the court must resolve all inferences in favor of the state and against the defendant. State v. Booker, 529 So.2d 1239 (Fla. 1st DCA 1988).
In that respect, the facts contained in Officer Porter's report are sufficient to establish a prima facie case of vehicular homicide. It is not pivotal to resolving the issue here that the report described the street in question as "lightly traveled," or that it indicated only that the area was residential, with no evidence of other factors such as children at play or an abundance of pedestrians. Neither can we entertain conjecture as to the possibility that the existing clear conditions would mitigate in favor of Knight's innocence. Rather, we are constrained to resolve any conflicting inferences that may be derived from the facts indicated in the report in favor of the state. That is, we must infer that Knight's driving through a residential area at a speed greater than that permitted on an interstate highway and at nearly twice the posted speed limit, while driving without a license and in a car that was in poor condition could indicate for purposes of a (c)(4) motion that he was operating his vehicle in a reckless manner which he knew or should have known would likely cause death or great bodily harm to anyone who might cross the road in front of him, notwithstanding that person's potential culpability.
Thus, contrary to the trial court's opinion, the case, at this posture, is not one simply involving "excessive speed." It is, therefore, distinguishable from the circumstances presented in W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989), Brown v. State, 511 So.2d 1116 (Fla. 2d DCA 1987), and Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983), which did not involve causes challenged at their inception by (c)(4) motions, but which, instead, proceeded to the jury following fully-developed trials.[2]
Based on the foregoing, we reverse the order granting Knight's motion to dismiss. The cause is remanded for further proceedings.
ERVIN and WOLF, JJ., concur.
NOTES
[1] Section 782.071(1) defines "vehicular homicide" as "the killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another."
[2] Interestingly, the Second District in Brown specifically declined to address the vehicular homicide issue because of the fact that the trial court had granted the defendant's motion in arrest of judgment as to that count. However, the court went on to observe nonetheless that that lesser included offense of the defendant's manslaughter conviction "appeared to have ample record support... ." 511 So.2d at 1117.